No. 84-357

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN RE THE CUSTODY OF

C.C., K.C., and B.C.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Susan Loehn, Eureka, Montana

For Respondent:

David W. Harman, Libby, Montana

Submitted on Briefs: Nov. 2, 1984

Decided: February 4, 1985

Filed: FEB 4 1985

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Nineteenth Judicial District, Lincoln County, Montana, the Honorable Robert M. Holter, presiding. Petitioner appeals both the denial of a motion to continue and the award of custody of the three minor children to respondent.

Appellant (petitioner below) was not present at the non-jury trial held on June 7, 1984. The court denied her attorney's motion for a continuance because of her absence and subsequently granted custody to respondent on June 19, 1984. On July 13, 1984, appellant filed a notice of appeal and later filed several motions. The motion to stay judgment was denied, the motion for relief from judgment was dismissed for lack of jurisdiction, and the motion to proceed without pre-payment of costs was granted. We affirm in part and reverse in part.

D.W.C. (respondent), currently twenty-seven years old, and N.M.V.A. (appellant), currently twenty years old, were married on February 14, 1980, in Eureka, Montana and made Eureka their home during marriage. C.C. was born on April 16, 1979. According to an affidavit by appellant and testimony by both respondent and his mother, respondent was not the natural father of C.C. However, respondent was listed as the father on the birth certificate at appellant's request and appellant and respondent were living together at the time of C.C.'s birth. C.C. was never adopted by respondent. K.C. and B.C., twins, were born during the marriage of the parties.

The parties separated early in 1984 when appellant moved the three children with her to a new residence in

2

Eureka. The petition for dissolution of the marriage, filed March 8, 1984 by appellant, alleged all three children were issue of the marriage and asked that custody be awarded to appellant. The response and counter-petition also alleged all three children were issue of the marriage and asked that custody be awarded to respondent.

The trial date of June 7, 1984 was set by the court on April 26, 1984. Both parties were informed of that date. Appellant left Montana, taking the children with her, about two and one-half weeks before the trial and did not return to appear at the trial. Affidavits by appellant filed in July of 1984, stated that the reason for her failure to appear was her lack of funds to travel and that she wanted to appear to present her case.

At trial, A.M.C., one of the grandparents, testified regarding the living conditions of the children during the marriage. They lived in poverty and filth. They had sores when they were in diapers and were not changed on a regular basis. They wore dirty clothes and slept in dirty beds. The grandparents purchased a lot and constructed a home to afford the grandchildren adequate shelter and purchased substantially all their clothing. The grandparents also took the children into their home for visits and would bathe and feed them.

Respondent is unemployed and a slow learner. He has graduated from high school and is seeking employment. In Eureka, the children would live in the house constructed by the grandparents and be cared for by respondent, the grandparents or a baby-sitter, and their situation would be monitored by the appropriate county agency.

Appellant's residence was somewhere in the state of Washington at the time of the court's order with her exact location and plans for the children unknown.

G.A.C. and A.M.C. petitioned for visitation rights as grandparents and were allowed to intervene by stipulation of the parties. They were awarded visitation rights of one weekend per month and two weeks during the summer. The visitation rights of the grandparents are not an issue in this appeal.

The two main issues presented for appeal are:

(1) Was it prejudicial error by the District Court to deny appellant's motion for a continuance?

(2) Was the District Court's award of custody proper?

As to the first issue, section 25-4-501, MCA provides that a motion to postpone a trial because of absence of evidence shall be made only upon an affidavit showing materiality of the expected evidence and that due diligence has been used to procure it. Here, appellant's counsel did not submit an affidavit to the District Court. In view of the mandatory language of the statute the District Court did not err in denying the motion. State v. Harvey (1979), 184 Mont. 423, 603 P.2d 661 and State v. Pascgo (1977), 173 Mont. 121, 566 P.2d 802.

Section 25-4-503, MCA, states that the court may use its discretion in granting a postponement if on grounds other than absence of evidence and upon a showing of good cause and in the furtherance of justice. There is no indication of other grounds for a postponement and no indication there would have been good cause if there had been other grounds. Appellant was aware of the trial date and the purpose of the trial and indicated no good reason for her voluntary absence.

4

We therefore hold that the trial court did not err in denying appellant's motion for a continuance.

The second issue begins with a determination of whether or not respondent is a parent of C.C. under section 40-6-105, MCA, for the purpose of determining custody.

Section 40-6-105(1), MCA states there is a presumption of paternity under a number of circumstances, one of which occurs when the man and the mother are married after the child's birth and the man, with his consent, is named as the child's father on the birth certificate. That is exactly what occurred in the present case. However, section 40-6-105(2), MCA states that this is a rebuttable presumption. Both parties have acknowledged under oath that respondent is not C.C.'s natural father. His name appeared on the birth certificate because the parties mistakenly assumed this would constitute an adoption. This is sufficiently clear and convincing evidence to rebut the presumption of paternity. Therefore respondent may be granted custody of C.C. only as a non-parent.

A parent may not be deprived of custody unless there has been a finding of unfitness, abuse or neglect. Korol v. Korol (Mont. 1980), 613 P.2d 1016 at 1019, 37 St.Rep. 1215 at 1218, citing Matter of Doney (1977), 174 Mont. 282, 570 P.2d 575. Here the trial court's findings indicate appellant's unfitness and inability to care for minor children. In In re the Marriage of Concepcion (Mont. 1984), 687 P.2d 718 at 720, 41 St.Rep. 1675, at 1677, we stated:

> "Under Rule 52(a), M.R.Civ.P., findings of fact shall not be set aside unless clearly erroneous. This Court's standard of review was stated in Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 768, 38 St.Rep. 927, 930 and recently cited with approval in In re the Marriage of Beitz

5

(Mont. 1984), 683 P.2d 485, 41 St. Rep. 1247, 1249:

> "'This Court will not substitute its judgment for that of the trier of fact. We will consider only whether substantial credible evidence supports the findings and conclusions. Findings will not be overturned unless there is a clear preponderance of evidence against them, recognizing that evidence may be weak or conflicting, yet still support the findings.'"

Appellant did not indicate, nor could we locate any finding of fact not supported by the record. Thus the findings will not be overturned and respondent, even though he is a non-parent, may be considered as a potential custodian for C.C.

Custody is determined in accordance with the best interests of the child. As stated in section 40-4-212, MCA:

> "The court shall consider all relevant factors including:
>
> "(1) the wishes of the child's parent or parents as to his custody;
>
> "(2) the wishes of the child as to his custodian;
>
> "(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> "(4) the child's adjustment to his home, school, and community; and
>
> "(5) the mental and physical health of all individuals involved." (Emphasis added.)

"Prior decisions of this Court have established that district courts must consider the wishes of the children regarding custody and make findings as to their wishes or why they were not followed." (Emphasis added.) In re the Marriage of Murphy (Mont. 1983), 666 P.2d 755 at 757, 40 St.Rep. 1188 at 1190, citing Milanovich v. Milanovich (Mont. 1982), 655 P.2d

6

961, 39 St.Rep. 1554; Kaasa v. Kaasa (1979), 181 Mont. 18, 591 P.2d 1110; and In re Marriage of Kramer (1978), 177 Mont. 61, 580 P.2d 439. While the award of custody is obviously within the District Court's discretion, it has no discretion to not consider the criteria in the statute. Markegard v. Markegard (1980), 616 P.2d 323, 37 St.Rep. 1539 and Tomaskie v. Tomaskie (Mont. 1981), 625 P.2d 536, 38 St.Rep. 416. The District Court here did not make any findings regarding the wishes of the children and the effect of those wishes because there was no evidence on this point. We have recognized that the wishes of four-year olds (the approximate age of the twins, C.C. was five at the time of trial) may have little weight. Murphy, 666 P.2d at 757. Even though a new trial may not change the result, we remand in order to include evidence regarding the children's wishes and for a custody determination in accordance with section 40-4-212, MCA.

Affirmed in part and reversed and remanded for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7